### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: RICHARD D. BAYS, | ) | CHAPTER  11 |
| | ) | |
| Debtor. | ) | |
| | ) | CASE NO.  11-72355 |

---

### <u>MEMORANDUM DECISION</u>

The matters before the Court in this Chapter 11 case are the Debtor's Motion to Abandon or Release Property ("the Abandonment Motion"), which was filed December 28, 2012 as docket no. 257, and the Trustee's Motion to Sell ("the Sale Motion") which was also filed on the same date as docket no. 259.  These motions were first heard on January 23, 2013 and were continued initially to February 6, then to February 20, then to March 6, and lastly to April 10, 2013 when they came on for final hearing.  Responses to the Abandonment Motion were filed by the Chapter 11 Trustee, George I. Vogel, II, Esq., and by Miners Oil Company, Inc. ("Miners Oil"), which is both a major creditor of the Bays bankruptcy estate and the wholly owned company of the Debtor.  It is also itself the subject of a Chapter 11 case now pending in this Court, Case no. 11-72354.  Objections to the Sale Motion have been filed by the Debtor, Miners Oil, and Space Petroleum & Chemical Co., Inc. ("Space Petroleum"), which is also a substantial creditor of both Miners Oil and the Debtor, Mr. Bays.  Following an evidentiary hearing held on April 10, the Court heard final arguments of the parties in interest by telephone conference call on the following day.  During that call the following individuals made arguments or other statements to the Court:  the Trustee, the respective attorneys for the Debtor, Miners Oil, Space Petroleum, Laura D. Bays (the Debtor's estranged spouse), and Robert J. Breimann, Esq. (the proposed purchaser in the Sale Motion) representing himself.  The Court during that conference

call, after hearing the remarks of all of such attorneys, described in general terms a tentative

decision which it was considering but had not decided upon and invited the comments of the

other participants to the call, all of whom did so.[1]  In the interest of providing to the parties an

expeditious decision, the Court wishes to incorporate in this decision by reference the statements

of the attorneys and the Court in that call.  Of course the Court's final decision is set forth in this

document.  Its ruling is to deny at this time but not dismiss the Abandonment Motion and to deny

as presented the Sale Motion but to grant a modified version of the latter motion upon the

specific terms set forth in this decision.  Further, the Court will continue the Abandonment

Motion to the May 22nd, 2013 docket of this Court in Abingdon and will schedule a status

hearing on the Sale Motion for the same docket.


## FINDINGS OF FACT

The Debtor and Mr. Breimann have known each other for many years, during

most of which the relationship was apparently purely client (Mr. Bays) and attorney (Mr.

Breimann).  At some point the two also became business associates in the operation of several

convenience stores and an ill fated video business.  Unfortunately in the last several years their

relationship soured and they are now at very obvious cross-purposes.  As relevant to the Sale

Motion, the Debtor and Mr. Breimann exclusively own six corporations, Kents Ridge Grocery,

Inc.; Green Springs Grocery, Inc.; Lakeway Speed Mart, Inc.; Doran Grocery, Inc.; Midway

Grocery, Inc. and Greenway Management, Inc., which serves as a management company for the

---

[1] The Debtor, Mr. Bays, was a party to the call but his counsel spoke on his behalf and the former's participation was limited to listening to the comments made by the attorneys and the Court.

2

other five corporations which have actually owned and operated the group of convenience stores.

As of this date, only one of the convenience stores is still operating.  The convenience store

corporations are all owned 1/3rd by Mr. Breimann and 2/3rds by the Debtor, but the management

corporation is owned by them equally.  The deterioration of the personal relationship between

Mr. Bays and Mr. Breimann seems to have come hand-in-hand with the adverse turn of their

joint business ventures.  It is apparent that now the two are either unable or unwilling to work

together to resolve the daunting business problems which they share.

      The Sale Motion proposes to sell the Debtor's interest in all of these companies to

Mr. Breimann for the sum of $2,500, which all of the parties acknowledge is not very

meaningful in the context of the size of the underlying assets owned by these corporations and

the very onerous level of the creditor claims against the Debtor.  The Trustee's underlying

rationale for the Sale Motion is that the liabilities of these corporations are such that there is no

actual equity value in them for the bankruptcy estate.  For example, they collectively owe Miners

Oil almost $800,000, largely, if not entirely, for fuel which it supplied to the stores on credit but

for which they were unable to pay.[2]  In addition to the operating debts of these companies,

however, they also have substantial liabilities for which the Debtor and Mr. Breimann are either

clearly liable, in the case of the mortgage and other debt owing to several banks for which they

are guarantors, or for which they very likely have other legal liability as responsible officers of

---

[2] According to the Debtor's testimony at the April 10th hearing, this total debt also includes approximately $150,000 each for the failed video business and a business venture involving an Exxon station and convenience store on highway no. 19, which would mean that something less than $500,000 represents unpaid fuel supplied to the convenience stores which are the subject of the Sale Motion.  Whether the latter category represents about $500,000 or substantially all of the almost $800,000 total debt owing to Miners Oil is not determinative of the ruling made on the motions before the Court.

the corporations for unpaid withholding and payroll taxes and lottery ticket sales.  Accordingly,

the Trustee is seeking not only to relieve himself of responsibility for burdensome assets but to

turn them over to the other owner who has a strong personal motivation to resolve these

contingent and guarantor obligations in a manner that is least harmful to his own wallet, which

would also redound to the benefit of the bankruptcy estate by minimizing, if not eliminating

entirely, its contingent liability for these same obligations.  As Mr. Breimann himself notes, his

motivation is "to save my own skin," but as the Debtor, Mrs. Bays, and Space Petroleum all

point out, however, under the terms of the Sale Motion Mr. Breimann does not assume any

actual obligation to do anything which would provide value to the bankruptcy estate other than

pay $2,500 to acquire both full ownership and control of these companies.

Although the precise timing is not in evidence, it is in evidence that the bank

which holds the majority of the mortgage debt owed by these corporations is already attempting

to schedule a foreclosure sale of the several store properties against which it has secured liens.

None of the parties appears to dispute that such a foreclosure sale is likely to result in substantial

deficiency claims against the loan guarantors and therefore against the bankruptcy estate.  The

Court finds that the collective liabilities of these corporations significantly exceed the present

value of their collective assets, whether those assets are liquidated in auction or similar sales

forced by the secured lenders or in a more orderly manner controlled by the borrowers.  The

Court further finds that unless additional working capital is forthcoming from some source

promptly, there is little realistic chance that these companies can even continue in business on

any basis, much less in a manner which might produce value, whether to the Debtor or his

creditors.  The Court further accepts the exhibits offered by the Trustee and those offered by the

Debtor as reasonably fair and accurate representations of the values of the corporations' assets

and the extent of their liabilities as well as their recent operating histories.  As currently

capitalized there seems to be no dispute that the corporations in question, at least collectively,

are insolvent.  In that context then, $2,500 to purchase them is by no means an insignificant

consideration as the odds that anyone other than the two owners would be willing to pay

anything to acquire them, subject to all existing liabilities, appear highly unlikely.  The Court

further accepts as accurate the Trustee's certificate that he served the Sale Motion and notice of

the initial hearing upon all creditors on December 28, 2012, more than twenty-one days before

the initial hearing date of January 23.[3]


CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C.

§§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on

July 24, 1984 and Rule 3 of the Local Rules of the United States District Court for the Western

District of Virginia.  A motion for court approval of sale of property owned by the bankruptcy

estate is a "core" bankruptcy proceeding pursuant to both the particular authority of 28 U.S.C. §

157(b)(2)(N) ("orders approving the sale of property") and the more general authority of

subsection (b)(2)(A) ("matters concerning the administration of the estate").  The Court further

concludes that it clearly has the constitutional authority, as well as the statutory authorization

provided by the District Court's delegation, to rule upon the motions before it.

---

[3] The Trustee's certificate of service was filed on December 28, 2012 with the Sale Motion.  No suggestion of any issue about such certificate's accuracy has been made by anyone.

The statutory authorization for the Sale Motion is found in § 363(b)(1) of the Bankruptcy Code, which, in relevant part with respect to such motion, provides that '[t]he trustee, after notice and a hearing, may . . . sell . . . , other than in the ordinary course of business, property of the estate[.]"   Bankruptcy Rule 6004 provides the procedural rules for effecting a sale of this type.   Pursuant to Bankruptcy Rule 2002(a)(2) twenty-one days notice of a proposed sale needs to be given to the bankruptcy debtor, the trustee, all creditors and indenture trustees.

Counsel for the Debtor has cited to the Court a decision by Bankruptcy Judge David H. Adams (now retired) of the Eastern District of Virginia in the case of *In re W. A. Mallory Company, Inc.*, 214 B.R. 834 (Bankr. E.D. Va. 1997) as setting forth the principles which ought to govern the Court's consideration of a pre-confirmation sale of estate property other than in the ordinary course of business.   These principles are collectively characterized as the "sound business purpose" test and require that the trustee (or debtor-in-possession) prove the following to justify such a sale:

> (1) a sound business reason or emergency justifies a pre-confirmation sale;
> (2) adequate and reasonable notice of the sale was provided to interested parties;
> (3) the sale has been proposed in good faith; and
> (4) the purchase price is fair and reasonable.

241 B.R. at 836.   For the purpose of deciding the Sale Motion at least, the Court will accept the correctness and applicability of Judge Adams's formulation of the "sound business purpose" test in *Mallory.*   In doing so, however, the Court will note an important distinction between this case and the facts presented there.   *Mallory* involved a proposed pre-confirmation sale by the chapter 11 debtor, which was operating as debtor-in-possession, of four properties to certain of its insiders for a collective sale price significantly less than their collective tax assessed or appraised

6

values.  In contrast, this proposed sale is one proposed by an independent trustee of certain

assets, which he believes to be burdensome and having no equity value in excess of the liabilities

to which they are subject, to one who is without question an "insider" with respect to the

business interests being sold but not as to either the Debtor or the Trustee.


## DECISION

While the Court is in basic agreement with the Trustee's underlying rationale that,

in the absence of any independent third party purchaser of these assets, the best chance of the

bankruptcy estate to avoid potentially large loan deficiency and unpaid tax claims against it for

guarantor and responsible person liability, respectively, is to put Mr. Breimann's self-interest to

work to restructure or refinance its bank debt and pay various governmental claims against these

corporations, it shares the concerns voiced by the Debtor, Mrs. Bays and Space Petroleum that

these expectations ought to be formalized as legal commitments if the Sale Motion is to be

approved at all.  Of course the Debtor opposes any sale to Mr. Breimann because he would like

to try to reorganize these businesses and make them successful for the long term benefit of

himself and his creditors.  For that to be even possible, though, would require the use of other

bankruptcy estate assets, as the Debtor himself proposes, to fund such an effort, which based on

the Debtor's prior business history with respect to the convenience store business would be both

quite risky and require the support of his creditors.  While the Court acknowledges, as counsel

for the Debtor argues, that the feasibility or other confirmability of a possible reorganization plan

which the Debtor might propose is not before the Court with respect to the pending motions, the

Court does believe that it is appropriate for it to take into account that any proposal along the

7

lines suggested by the Debtor in his testimony at the April 10 hearing would require the support

of his creditors to hold the payment of their claims in abeyance to give him an opportunity to

make the convenience stores successful and that creditor support for Mr. Bays's positions in this

case and the Miners Oil case has been notably non-existent so far, other than their shared

concerns about the benefits of the Trustee's Sale Motion now before the Court.  The Court also

believes that it is appropriate to point out that the Debtor's proposal that the bankruptcy estate's

interest in these corporations should be abandoned to him or retained by the bankruptcy estate

for the purpose of enabling him to utilize them in the formulation of a plan of reorganization

would leave them subject to Mr. Breimann's one-third ownership of the convenience store

corporations and one-half ownership of the management corporation, in short without having a

free hand to control them in the sole interest of himself or his creditors.  To say the least, the

prospects for a successful continuation of these enterprises in their present status as jointly

owned by these men do not appear promising.

   The Court concludes that the circumstances presented here and detailed in this

Memorandum Decision, particularly the extremely precarious business and financial situation

presently faced by these corporations and the likelihood of an early foreclosure sale of a majority

of the substantial assets of several of these corporations, do constitute a sound business reason

for their sale now before a foreclosure sale takes place.  The Court notes that this case was filed

on November 21, 2011 and that the only plan filed to date in the case was one offered by Miners

Oil.  The Court also concludes that the notice given by the Trustee was adequate to put the

creditors on notice of the proposed sale and its terms, even if it did not set forth the Trustee's

underlying rationale for proposing the sale.  No one has suggested that there is any relationship

between the Trustee and Mr. Breimann or any other reason for the Trustee to propose this sale other than his belief that is in the best interest of the bankruptcy estate for which he serves as trustee.  The Trustee is a very experienced and respected panel trustee appointed by the United States Trustee and the Court is entirely satisfied that he has filed and prosecuted the Sale Motion in good faith.  Lastly, the Court further concludes that, under the modified terms of sale as approved in this decision, the proposed purchase price of $2,500, when coupled with the other consideration required by this decision, constitutes a fair and reasonable purchase price.

The Court will deny the Sale Motion as presented but will approve it with the following modifications, if acceptable to the Trustee and Mr. Breimann:

1.  Instead of an absolute sale of the assets in question, it will be an option for a period of thirty days following the entry of an accompanying order to this decision for an option price of $2,500, which Mr. Breimann shall pay over to the Trustee within seven days of the entry of such order and which the Trustee shall hold in trust until authorized under the terms hereof to pay it over to the bankruptcy estate.  The option price shall be non-refundable unless this ruling is appealed and set aside by an appellate court or by a subsequent order of this Court, in which case it will be returned in full to the purchaser.

2.  The terms of the option will be to permit Mr. Breimann to acquire the estate's ownership of the six corporations for the sum of $2,500, against which the option price will be credited in full, if and only if the purchaser is able to provide evidence satisfactory to the Trustee in his reasonable business judgment that the purchaser has obtained one or more lender actual commitments to lend and/or restructure the existing financing upon which the Debtor and Mr. Breimann are jointly responsible as loan guarantors and to satisfy any unpaid tax or similar

9

liability for which the two of them are likely liable as responsible persons or other similar basis

as corporate stockholders and officers.  Furthermore, Mr. Breimann shall furnish his written

commitment, subject to the exercise and successful closing of the option sale, to use any new

financing to satisfy existing corporate indebtedness upon which he and Mr. Bays are both

responsible and to hold the Bays's bankruptcy estate harmless from any liability with respect to

such guaranteed loan obligations or responsible person liability, not to exceed the approximate

amounts disclosed in the financial information provided by Travis Proffitt, CPA in the Trustee's

exhibits offered and admitted into evidence at the April 10 hearing.  The purchaser will also

waive in writing any right to file a claim against the bankruptcy estate for any co-obligor liability

he would otherwise have against it for his payment of such obligations and any claim as the

purchaser or other assignee of any such claims against the Bays's bankruptcy estate.  It being

apparent, however, that the Debtor is contemplating some type of legal action against Mr.

Breimann with respect to their business association, such waiver shall not preclude the latter

from utilizing any co-guarantor or similar claims as a defense or offset to liability for any claims

brought by the Trustee or other party on behalf of the bankruptcy estate or by the Debtor

individually with respect to Mr. Breimann's involvement in these businesses or actions taken or

which he failed to take in connection with his capacities as a shareholder, officer or director of

any of them or as co-obligor with respect to any of their debts, other than to enforce his

obligations arising from his exercise of the option under the terms herein approved.

  3.  Such option must be exercised, if at all, by written notice given by Mr. Breimann to

the Trustee within thirty days of the date of entry of the Court's order, but the closing of the sale

and transfer of the underlying corporate stock may be deferred for an additional period of up to

thirty more days, upon the agreement of both the Trustee and the purchaser, to suit the convenience of the parties.  The Trustee need not require proof that the purchaser has obtained within the thirty day option period commitments from all of the lenders needed to refinance or restructure the specified debt obligations as long as the latter has obtained a satisfactory commitment with respect to more than 50% of such total debt and is willing to provide his own commitment to the bankruptcy estate that he assumes sole responsibility for any remaining debt for which he and Mr. Bays are or likely are liable with regard to the corporations which are the subject of the Sale Motion.

4.  The Court will retain jurisdiction to resolve any controversies arising out of the application or interpretation of this decision, which shall be presented to the Court by means of a motion which has been noticed to all parties in interest for hearing.  The Court will hold a status hearing on the Sale Motion and a continued hearing on the Abandonment Motion in Abingdon on May 22, 2013 at 11:00 a.m.  In the event the option is not exercised, or is attempted to be exercised but does not actually close for any reason, the Sale Motion will be taken up at such hearing and the Court would expect to dismiss it at that time without prejudice to the Trustee's right to file a subsequent motion with respect to the same assets.

This Decision will be implemented by an accompanying order to be entered contemporaneously herewith.

DECIDED this 15th day of April, 2013.

William F. Stone, Jr.
UNITED STATES BANKRUPTCY JUDGE