IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 11 |
| RICHARD D. BAYS ) | |
| ) | |
| Debtor. ) | CASE NO. 11-72355 |

## MEMORANDUM DECISION

The matter before the Court in this case is the Chapter 11 Trustee's Objection to Exemptions ("the Objection"), to which the Debtor has filed a Response. The matter came on for hearing in Abingdon on May 22, 2013 at which many of the issues raised by the Objection were resolved. Remaining for decision are two IRA accounts owned by the Debtor at the time this case was filed. For the reasons set forth below, the Court will sustain the Objection as to the smaller of the accounts but overrule it as to the other.

PROCEDURAL HISTORY AND FINDINGS OF FACT

This case was filed by the Debtor under Chapter 11 of the Bankruptcy Code on November 21, 2011. Thereafter the Debtor operated as a debtor in possession but never filed a Chapter 11 plan, either of reorganization or liquidation. On October 1, 2012 the United States Trustee filed a Motion to Convert the case to Chapter 7 and the Court first heard that motion on October 17, 2012. The Motion was initially continued to October 19, 2012 and then to November 7, 2012 at which time the Debtor testified in opposition to conversion and requested more time to file a plan. After arguments and evidence were presented, the Court ruled from the bench and held that appointment of a Chapter 11 Trustee was in the best interest of the creditors. The Court entered an Order on November 9, 2012 directing the U.S. Trustee to appoint a Chapter

11 Trustee. On November 15, 2012 George I. Vogel, II, Esq. was appointed to serve as the Chapter 11 Trustee in this case and has continued to serve in that capacity since that time. Among various actions taken by Mr. Vogel in his capacity as Trustee, he filed on March 12, 2013 the Objection at issue here.

Schedules were not filed in this case at the same time as the petition but were later filed on December 19, 2011. The Debtor listed one retirement account on Schedule B as a "Simple IRA" with a current value of $89,000, while Schedule C stated "No exemptions claimed." The Debtor on February 17, 2012 filed Amended Schedules A, B, D, F, and J, but changed nothing regarding the listing or value of the "Simple IRA" in Schedule B, nor did he amend the existing Schedule C. On March 20, 2012 the Debtor filed further Amended Schedules B and D, but made no changes relative to the IRA listing. Nearly fourteen months after filing the initial schedules, the Debtor filed on February 15, 2013 a further Amended Schedule B and an Amended Schedule C. This Amended Schedule B showed the same description and value for the IRA, but the amended Schedule C added an exemption claimed of the full value of the IRA, $89,000, under Va. Code § 34-34 and 11 U.S.C. § 522(b)(3)(C). The filing of the amended Schedule C precipitated the Trustee's filing of the Objection on March 12, 2013.[1] The Trustee objected to the Debtor's claim of exemption in the IRA to the extent any assets had been withdrawn "prior to or during the pendency of the Debtor's Chapter 11 proceedings" or to the extent that the IRA does not comport with applicable requirements to be considered exempt.

---

[1] The Trustee's Objection centered on three types of property claimed by the Debtor as exempt: real property owned as tenants by the entireties, a number of items of tangible personal property, and intangible personal property represented by the IRA listing. All issues regarding the first two categories of property were resolved at the hearing by agreement of the parties, which was approved by this Court's order entered on May 29, 2013 (docket entry # 439).

The Objection was originally set for hearing on May 8, 2013 but was continued to be heard on May 22, 2013.

On May 16, 2013 the Debtor filed a Response arguing that the IRA was properly exempted based on the concept that the nature and value of property are determined as of the time of filing. He further asserted that "property acquired by the debtor after the petition is filed may be retained by the debtor, clear of all claims ultimately discharged." The remainder of the Response focused on the concept that 11 U.S.C. § 105 provides the Court with equitable powers to ensure that the Debtor can obtain disinterested counsel utilizing his exempt property to provide him due process.[2]

Prior to the hearing, the Trustee filed nineteen exhibits and a brief setting out his contentions. Of particular note is Exhibit Number 2, which is the Debtor's Answers to [the Trustee's] Interrogatories. In it, the Debtor signed under penalty of perjury a statement explaining the history and expenditure of the funds received from the post-petition withdrawal of the entire balance of the previously undisclosed second IRA. He states,

> I made a withdrawal from the IRA account during 2012 for approximately $27,275.12. I delivered the check to Mr. John Laime [sic] for safe keeping while I attempted to utilize the proceeds to reinstate unpaid insurance payments of Miners Oil Company, Inc. The check expired by its terms, and I requested a replacement check, and **deposited those funds into my DIP account** at Highland Union Bank on or about February 20, 2012, 2013 [sic].[3] (emphasis added).

---

[2] This Response was pending at the same time as the application pursuant to 11 U.S.C. § 327 to employ the law firm of Pels, Anderson L.L.C. and its attorneys, which was ultimately denied by this Court's Memorandum Decision and Order entered on May 17, 2013.

[3] Of course as of February 20, 2013 the Debtor had not been a debtor in possession for more than three months.

3

(Answer to Interrogatory No. 2, Trustee's Exhibit 2). The Trustee alleges in his brief that on August 28, 2012 the Debtor withdrew funds in the amount of $27,275.12 from an IRA he had with ING USA Annuity and Life Insurance Company. The issued check went stale in the possession of Debtor's then counsel, Mr. Lamie, and was reissued on February 12, 2013. The reissued check was negotiated by the Debtor and deposited on February 20, 2013 into the account of Mr. Dallas N. Burks. Subsequently a portion of these funds was wired to the account of Pels, Anderson L.L.C. as a retainer for legal services. Mr. Bays used the remainder of the funds, all but approximately $400, to pay for appraisals, salaries of employees, and to pay back various other debts.

The Trustee goes on to assert that the Debtor requested a full contract surrender from a separate IRA account with ING USA Annuity and Life Company in the amount of $81,068.04 in March of 2013 and from such transaction a check payable to the Debtor was issued on March 11, 2013. This check, however, was not cashed or otherwise negotiated by the Debtor until he ultimately deposited it on May 10, 2013 into an "IRA Certificate of Deposit."

The Trustee takes the position with regard to the smaller IRA that it was completely surrendered by the Debtor on September 4, 2012, that the funds have lost any exempt status, and that they may be recovered as part of the Debtor's bankruptcy estate. He asserts in his Brief in Support of Objection to Exemptions that "because . . . [the IRA account] in the amount of $27,275.12 was completely surrendered by the Debtor on September 4, 2012, and all of the funds therefrom were deposited into the checking account of Dallas N. Burks on February 20, 2013, during the pendency of the Debtor's Chapter 11 case, the funds have lost any exempt status they may have had. . . ." He further stated in argument at the May 22nd hearing that the

Debtor had received the distribution check for the smaller account in 2012 but never claimed any IRA exemption until February of 2013 and that such fact has bearing on his entitlement to the exemption claim.  With regard to the larger IRA account, the Trustee argues that upon withdrawal of the funds on March 11, 2013, the money became property of the estate and, because a Chapter 11 Trustee had been appointed, the Debtor lacked standing or authority to deposit the funds into another account.

Immediately following the Trustee's filing of his Brief, the Debtor filed further Amended Schedules B and C.  The newest Amended Schedule B is the first to disclose the second IRA account and now lists "Simple IRA with ING *1979" valued at $26,841.62 **and** "Simple IRA with ING *1995" valued at $78,458.98.  Amended Schedule C claims both these accounts as exempt in their full amounts based on Va. Code § 34-34.  The Debtor also filed a reply brief arguing that exemptions are determined as of the date of filing and that 11 U.S.C. § 522(d)(10) is dominant over 11 U.S.C. § 541 and 11 U.S.C. § 1115.

A hearing was held on May 22, 2013 where the Debtor, counsel for the Debtor, and the Trustee appeared.  Richard E.B. Foster, Esq. also appeared on behalf of Ms. Laura Bays, the Debtor's estranged spouse.  At the hearing it was announced that the parties had reached an agreement regarding the tenants by the entireties exemption and the Trustee indicated he was withdrawing his objection as to the miscellaneous office equipment.[4]  Thus the issues were

---

[4] Earlier at the hearing on May 22, 2013 the bankruptcy estate's 2/3rds interest in Lakeway Speed Mart, Inc., which owned the convenience store known as Lakeway Speed Mart, was abandoned to the Debtor.

narrowed to the exemptions claimed in the IRAs and surveillance equipment.[5]  The Debtor testified regarding the disbursement of the IRA accounts and more specifically how the funds were handled.  He testified that the reissued check he received on account of the smaller IRA was deposited into the bank account of Mr. Burks, a personal friend of the Debtor, and not into the debtor in possession account as he had previously asserted in his answers to interrogatories.  In response to questioning by the Trustee, the Debtor could only offer the reasoning that he put the money into his friend's account because he wanted to hire different counsel.  When pressed he added that he needed the money to pay for appraisals and "catch up on some bills" as he had not had any income in four to five months.  The Trustee asked the Debtor whether he could have paid the same bills from the debtor in possession account and he responded that he could have.  He also testified that he did not disclose any of these transactions to the Trustee, his then-current counsel Mr. Lamie, or to the U.S. Trustee.[6]

    The Trustee then called Dallas Burks to testify.  Regarding the deposit of the IRA funds, Mr. Burks stated that he had never participated in an arrangement like that before with Mr. Bays or with anyone else, that he did not know why Mr. Bays wanted to put the money in his account, and that he did not ask any questions regarding the use of his account.  Although the evidence was not entirely clear on this point, the Court finds that the greater weight of the evidence is that only the name of Mr. Burks was on the account and that Mr. Bays was able to

---

[5] The Objection regarding the exemption of surveillance equipment was later resolved by an agreed order.

[6] Following Mr. Bays' testimony, Mr. Foster made a request that the IRA funds be frozen until Ms. Bays' rights to the funds could be ascertained.  Mr. Anderson objected on behalf of Mr. Bays and the Court stated that it would limit its ruling solely to the issues raised by the Objection.

6

effect disbursements from it with his friend's cooperation. Mr. Burks also testified that he is storing various property for Mr. Bays at his facility including a jet ski, a boat, a red BMW, and "maybe a few other items." Following Mr. Burks' testimony the Trustee and Debtor's counsel reiterated their respective positions. Accordingly, the matter is now ready for decision.

CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. An objection to a claim of exemption is a "core" bankruptcy proceeding pursuant to the particular authority of 28 U.S.C. § 157(b)(2)(B) for determination of exemptions from property of the estate.

Pursuant to Fed. R. Bankr. P. 4003(b)(1), any party in interest may object to a debtor's claim of exemptions within 30 days of the filing of any amendment to such exemptions. Here, the Debtor filed Amended Schedule C on February 15, 2013 and the Trustee filed his Objection on March 12, 2013, which is within 30 days of the Debtor's filing of Amended Schedule C and is therefore considered a timely objection. The applicable sections of 11 U.S.C. § 522(b) provide the basis for exemption and requirements for exempting IRA accounts:

> (b)(1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection.
> . . .
> (3)(C) retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.
> . . .

> (4) For purposes of paragraph (3)(C) and subsection (d)(12), the following shall apply:
>
> . . .
>
> (D)(i) Any distribution that qualifies as an eligible rollover distribution within the meaning of section 402(c) of the Internal Revenue Code of 1986 or that is described in clause (ii) shall not cease to qualify for exemption under paragraph (3)(C) or subsection (d)(12) by reason of such distribution.
>
> (ii) A distribution described in this clause is an amount that –
>
>> (I) has been distributed from a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986; and
>>
>> (II) to the extent allowed by law, is deposited in such a fund or account not later than 60 days after the distribution of such amount.

The exemption for retirement accounts in the Virginia Code contains similar language and directly references federal bankruptcy law. Va. Code § 34-34(A) defines "Retirement plan" as,

> a plan, account, or arrangement that is intended to satisfy the requirements of United States Internal Revenue Code §§ 401, 403 (a), 403 (b), 408, 408 A, 409 (as in effect prior to repeal by United States P.L. 98-369), or § 457. Whether a plan, account, or arrangement is intended to satisfy the requirements of one of the foregoing provisions shall be determined based on all of the relevant facts and circumstances including, but not limited to, the issuance of a favorable determination letter by the United States Internal Revenue Service, reports or returns filed with United States or state agencies, and communications from the plan sponsor to participants.

Va. Code § 34-34(B) states,

> Except as otherwise provided in this section, the interest of an individual under a retirement plan shall be exempt from creditor process to the same extent permitted under federal bankruptcy law for such a plan. The exemption provided by this section shall be available whether such individual has an interest in the retirement plan as a participant, beneficiary, contingent annuitant, alternate payee, or otherwise.

The issue before the Court is whether either or both IRA accounts are properly claimed as exempt; therefore, each account will be addressed in turn. In making that determination, the Court will keep in mind that pursuant to Bankruptcy Rule 4003(c) the Trustee as "the objecting party has the burden of proving that the exemptions are not properly claimed." Accordingly, the Court will consider only the specific issues raised by the Trustee.

*Smaller IRA Account*

Disclosure of the existence of a bankruptcy debtor's property is a fundamental obligation assumed by such a debtor when he files a petition for bankruptcy relief. Even property which the debtor is entitled to claim as exempt may lose that status if the debtor fails to fulfill his disclosure obligations.

> In some cases, the debtor may seek to amend the exemption claim to include property not originally listed in the schedule of assets filed at the commencement of the case. Generally, the courts will liberally allow the amendment of the schedules. However, if the court finds that the debtor intentionally omitted the property from the original schedules, the court will deny the debtor the opportunity to amend the exemption claim to include the newly disclosed asset.

4 *Collier on Bankruptcy* ¶ 522.08[2], at 522-47 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012). The Bankruptcy Court for the District of Massachusetts held that undisclosed IRA funds were not properly exempted in *Agin v. Daniels (In re Daniels)*, 452 B.R. 335 (Bankr. D. Mass. 2011), *aff'd*, 482 B.R. 1 (D. Mass. 2012). In that case, the debtor took funds from a self-created profit sharing plan and transferred them into two IRA accounts six months prior to filing bankruptcy. *Id.* at 343. He did not disclose the transfer or the IRA accounts on Schedule B or C. *Id.* The court held that, "[e]ven assuming, *arguendo,* that the IRAs were otherwise exempt, the Debtor would still be barred from claiming the exemption on account of his failure to disclose

existence of the IRAs." *Id.* The debtor argued that his failure to disclose was due to a "mistake" arising from a "misunderstanding" as to what kind of funds they were. *Id.* at 351. The court set out the standard that "[i]n evaluating whether a debtor should be barred from claiming property as exempt, intent to conceal and bad faith are factual determinations to be made by the court based upon the evidence presented and an examination of the relevant surrounding circumstances." *Id.* In determining that the debtor was barred from claiming the IRAs exempt, the court considered the fact that the debtor was a "sophisticated businessman" and that he had multiple opportunities over the span of the bankruptcy case to disclose the existence of the IRAs, but chose not to do so. *Id.* at 352. Judge Douglas O. Tice, Jr. of the Eastern District of Virginia held similarly that debtors who voluntarily transferred funds out of a deferred profit sharing plan, prior to disclosing its existence, cannot subsequently exempt those funds. *In re Price*, 2008 LEXIS 486, at *6-7 (Bankr. E.D. Va. Feb. 19, 2008).

Here, as in *Daniels*, the Debtor is a sophisticated business man who has created a complex financial empire using various corporate and non-corporate entities. During previous hearings the Debtor expressed an intent to use his IRA funds to pay insurance premiums necessary to maintain his businesses. He requested the cash surrender of the funds in the smaller IRA account on August 28, 2012, while operating as a debtor in possession. (Trustee's Exhibit 8). At that time the Debtor had not claimed any of his property as exempt. This request was not disclosed to the U.S. Trustee or the Court through any amended schedules or in the Debtor's monthly operating reports. The Transaction History Report provided by ING shows a "Cash Surrender" in the amount of $27,275.12 on September 4, 2012. (Trustee's Exhibit 11). The first check expired on its own terms and the Debtor requested a replacement check, which was issued

in the same amount and dated February 12, 2013. (Trustee's Exhibit 6). The Debtor endorsed this check and deposited it into the account of Mr. Burks on February 20, 2013. (Trustee's Exhibit 4). This receipt and deposit were not disclosed to the Trustee, the U.S. Trustee, or the Court, although during this time period he did file an amended Schedule C claiming an IRA in the amount of $89,000 as exempt. In response to the Trustee's Interrogatories, the Debtor answered under penalty of perjury that he deposited the funds on February 20, 2013 into the debtor in possession account. The date of deposit was correct, however the identification of the receiving account was not. (Trustee's Exhibit 2). The Debtor and Mr. Burks each testified on May 22, 2013 that the check was deposited into Mr. Burks' account and not the debtor in possession account.

With regard to the "opportunities to disclose" factor considered by the *Daniels* court, it was not until May 21, 2013, nearly eight months after the initial request for surrender, that the smaller IRA was disclosed on any schedule of the Debtor. The Debtor signed Amended Schedules B and C on February 15, 2013 certifying "under penalty of perjury that I have read the foregoing summary and schedules, consisting of 26 sheets, and that they are true and correct to the best of my knowledge, information, and belief." (Trustee's Exhibit 18). At that point in time he had already requested not one, but two checks cashing out this second undisclosed IRA account. His request for a second check would have had to have been just days before certifying the accuracy of the schedules. Despite these actions by the Debtor, the second IRA account was not disclosed on that version of Amended Schedule B or Amended Schedule C. The sole retirement account that remained listed was a "Simple IRA" with a value of $89,000. It has been proven that the Debtor was aware that he had two IRA accounts no later than August 28, 2012,

yet he did not reflect that fact in his schedules until May 21, 2013.

The Fourth Circuit Court of Appeals addressed a similar issue in *Tavenner v. Smoot (In re Smoot)*,[7] with regard to property that could have been held exempt, but for the debtor's fraudulent transfers. After first looking at some courts' interpretation of the "no harm, no foul" approach to a debtor's fraudulent transfer of property that could have been rightfully claimed as exempt, it continued,

> A majority of courts have rejected this approach, however, noting that under the bankruptcy laws, as revised in 1978, **all property, including potentially exempt property, is part of the bankruptcy estate until the debtor claims an exemption for it**; consequently, a transfer of potentially exempt property could harm creditors because it might not have actually been exempted from the bankruptcy estate.

*Id.* at 407 (emphasis added).

The Court concludes that it need not attempt to determine the precise motivations and intent present in the Debtor's mind when he first failed to amend his schedules to disclose clearly the existence of two IRA accounts after becoming aware of that fact and later deposited the distribution check from the undisclosed account into a friend's bank account. That would be a difficult task at best, but, more importantly, even though the Trustee has produced evidence that could support an inference of an intent to conceal on the Debtor's part, he has not made any actual contention that the latter should be precluded on bad faith grounds from claiming the IRA account as exempt. The Court concludes that he need not do so. The simple fact is that the Debtor obtained a distribution check for that account on or about August 28, 2012 and made no effort to make a timely rollover distribution of that money into a new IRA account, but rather

---

[7] 257 F.3d 401 (4th Cir. 2001).

decided to use such funds to meet the exigencies of the present rather than preserve them for retirement. The Court agrees with the Trustee that the fact that no exemption had been claimed in that asset until after the fact does indeed bear on the Debtor's right to establish a claim of exemption in that account. With no claim of exemption in place during the time that the Debtor could have made a qualifying "rollover" contribution into a new account, the money from that account became unrestricted property of the bankruptcy estate and ceased to enjoy the protection available to it under § 522(b)(4)(D).

*Larger IRA Account*

The Debtor's exemption of the larger IRA presents a more straightforward issue. The applicable portion of § 522(b)(4)(D) allows for the exemption of retirement funds where there has been a distribution that qualifies as an eligible rollover per 26 U.S.C. § 402(c) or a distribution from an account that qualifies as exempt under the applicable tax code provisions that is subsequently deposited into another qualified account within 60 days. "Rollover contributions are entitled to favorable tax treatment under the IRS Code because they are treated as if they were original contributions by the employee, i.e., they are not taxed until distribution." *In re Tabor*, 433 B.R. 469, 473 (Bankr. M.D. Pa. 2010). The District Court for the District of Maryland reached a similar result in *In re Gibson*, 300 B.R. 866 (D. Md. 2003). The debtor in *Gibson*, prior to filing for bankruptcy, withdrew $29,000 from her 401(k) and deposited the funds into a checking account. *Id.* at 868. Subsequent to filing, but within 60 days of withdrawing the funds, she deposited the majority of the money into an IRA account. The trustee objected to the debtor's exemption of the funds and the bankruptcy court overruled the objection on the basis that the funds were deposited during the "60-day grace period afforded

under the Internal Revenue Code[.]" *Id.* at 869.  The District Court found that the Maryland exemption scheme afforded broader rights to the debtor than those under federal law and thus determined that the funds did not lose their exempt status despite the interim deposit into a checking account.  It bears noting that the *Gibson* decision was made prior to the addition of § 522(b)(4)(D) to the Code in 2005 as a part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA").  The most reasonable inference to draw from that is that Congress endorsed the result reached in that case and undertook to assure that bankruptcy debtors would continue to be able to hold their qualified IRA assets as exempt so long as any such accounts or their proceeds remained protected under the applicable provisions of the Tax Code.

Unlike the debtor in *Gibson*, the Debtor in the instant case did not cash nor deposit the check issued from the larger IRA into a regular bank account.  The check was dated March 11, 2013 and was deposited directly into an "IRA Certificate of Deposit" by the Debtor on May 10, 2013.  This deposit was within 60 days of the surrender of the original IRA account.  Further, the Court concludes that the Trustee's contention that the Debtor, after the appointment of the Chapter 11 Trustee, no longer had the power to preserve his exemption rights in the IRA account by depositing it in a timely manner into a new IRA account, is mistaken.  It is erroneous because the Debtor, admittedly after certain missteps, ultimately took advantage of the right expressly given to him under the language of § 522(b)(4)(D) to make a timely "rollover" of the larger account into another IRA account.  Such a contention is contrary to the broad language of § 522(b)(4)(D) which refers to "[a]ny distribution" and flies in the face of the obvious intent of the statute that a bankruptcy debtor's rights in qualified IRA accounts be protected until such rights have been irrevocably lost.  It will be presumed that the recipient account is a properly

qualified IRA account in the absence of any evidence from the Trustee to the contrary. The Court further concludes that the Debtor is correct in asserting that the specific exemption language in § 522(b)(4)(D) controls over the general provisions of §§ 541 and 1115 which deal with property of the bankruptcy estate. *See BancOhio Nat'l Bank v. Walters (In re Walters)*, 724 F.2d 1081, 1083 (4th Cir. 1984), and *In re Martinez*, 2011 Bankr. LEXIS 1331, at *5 (Bankr. E.D. Va. Mar. 30, 2011).

DECISION

For the foregoing reasons the Court concludes that the Debtor lost the right to claim as exempt the proceeds of the smaller of the two IRA accounts by reason of his failure to disclose the existence of such account or to claim any exemption in it until after the funds in that account had lost their eligibility to be deposited into a new qualified IRA account, but that § 522(b)(4)(D) applies and secures his effort to maintain his claim of exemption in the larger account. The Court also concludes that it is not necessary in order to decide the present dispute to determine whether an individual Chapter 11 bankruptcy debtor's post-petition withdrawal and use during the pendency of the case, prior to confirmation of a plan, of money in a qualified IRA account, which has been disclosed and claimed as exempt in duly and timely filed schedules, results in a waiver of the right to claim such account proceeds as exempt from the bankruptcy estate. That, as the common expression goes, is a very good question, but the Court believes that its answer should await a case presenting those facts. Neither does this decision address issues which may arise as a result of this holding, which is limited to sustaining the Trustee's Objection as to the smaller of the two IRA accounts but overruling it as to the larger account. An Order in

accordance with this Memorandum Decision will be entered contemporaneously herewith.

Decided this 20th day of June, 2013.

_____
UNITED STATES BANKRUPTCY JUDGE